OPINION
On July 15, 1999, the Richland County Grand Jury indicted appellant, Renardo Minor, on one count of aiding and abetting an aggravated murder with a firearm specification in violation of R.C. 2903.01(B) and one count of aiding and abetting an aggravated robbery with a firearm specification in violation of R.C.2911.01(A)(1). Indicted with appellant was Ronald Leaks. Said charges arose from the robbery of Papa Johnny's Drive Thru and the murder of Clarence Jacocks on March 12, 1999. Also involved in the commission of the crimes was one Lawrence Holder who had yet to be apprehended. Mr. Leaks filed a motion to suppress statements he made to police and the contents of a telephone conversation between Detective Frank Parrella and appellant. A hearing was held on August 2, 1999. By judgment entry filed August 3, 1999, the trial court ruled Mr. Leaks's statements made to Atlanta Detective Brian McGann were admissible. Statements Mr. Leaks made to Detective Burks and Detective Parrella were inadmissible. As for the telephone conversation, the trial court ruled a portion of the conversation was admissible and a portion was not. The trial court lined out the inadmissible portion of the conversation in Exhibit A and attached such to the judgment entry. A jury trial commenced on July 29, 1999. Appellant was tried with Mr. Leaks. The jury found appellant guilty as charged. By judgment entry filed August 10, 1999, the trial court sentenced appellant to an aggregate term of thirty-three years in prison. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I. THE TRIAL COURT ERRED IN PERMITTING THE ADMISSION OF A STATEMENT OF ONE CO-DEFENDANT WHICH INCRIMINATED THE OTHER CO-DEFENDANT AND ALSO IN PERMITTING THE PROSECUTING ATTORNEY IN REBUTTAL ARGUMENT TO USE THAT BRUTON STATEMENT.
II. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH EACH AND EVERY ELEMENT OF THE CRIMES CHARGED.
III. APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL PROVIDED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION, AS WELL AS THE DUE PROCESS PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND IN ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION.
 I.
Appellant claims the trial court erred in permitting an incriminating statement from the codefendant in violation of Bruton v. United States (1968), 391 U.S. 123. We disagree. In Schneble v. Florida (1972), 405 U.S. 427, 429-430, the Supreme Court of the United States explained the Bruton holding as follows: The Court held in Bruton that the admission of a confession of a codefendant who did not take the stand deprived the defendant of his rights under the Sixth Amendment Confrontation Clause, when that confession implicated the defendant. Even when the jury is instructed to consider the confession only against the declarant, the Court in Bruton determined that the danger of misuse of the confession by the jury was too great to be constitutionally permissible. The complained of statement made by the codefendant, Mr. Leaks, was elicited from Atlanta Detective McGann as follows:
 A. I was writing up the police report, the arrest ticket and verifying the warrant.
Q. And while you were doing that, did Leaks say anything to you?
 A. Yes, he did. He stated, `You know what the fucked up thing is, that I didn't even know where we were when it happened.
T. at 949.
We note that Mr. Leaks mentioned "we" but did not state who the "we" were or even if appellant was with him. The evidence prior to this testimony established the robbery/murder was done by two individuals. T. at 544, 624-626. A videotape of the incident from the camera inside Papa Johnny's Drive Thru positively identified the two individuals as Mr. Leaks and Mr. Holder, not appellant. See State's Exhibits 6A and 6B. In closing argument, the prosecutor made the following comment: All he [Mr. Leaks] denies is the actual shooting and that's consistent with the facts. And what is the final thing he said? You know what the fucked up thing is, I didn't even know where we were when it happened. Where we were. Who is we? Leaks, Minor and Lawrence Holder.
T. at 1236-1237. Appellant argues Mr. Leaks's statement and the state's use of it in closing argument violated the rule set forth in Bruton. We disagree with appellant's argument. The "we" could clearly refer to the individuals in the videotape as opposed to the "we" including appellant. Mr. Leaks did not identify appellant as being a part of the "we." The fact that the prosecutor in closing argument inferred the "we" included appellant is not a Bruton violation. We note in State v. Stephens (1970), 24 Ohio St.2d 76,82, the Supreme Court of Ohio held "[i]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." Upon review, we cannot say the trial court erred in permitting Mr. Leaks's statement. The trial court was fully aware of the Bruton rule as it was discussed during the hearing on the motion to suppress. August 2, 1999 T. at 43, 86-87. We find the use of the pronoun "we" was not an incriminating statement specifically including appellant. The prosecutor's inference was not a Bruton violation. The context of the prosecutor's closing argument addressed the arguments advanced by Mr. Leaks's trial counsel, not appellant's.
Assignment of Error I is denied.
 II.
Appellant claims the verdict was against the manifest weight and sufficiency of the evidence. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Appellant was charged with aiding and abetting a robbery/murder in violation of R.C.2903.01(B) and R.C. 2911.01(A)(1) which state as follows: 2903.01
Aggravated murder. (B) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.
2911.01 Aggravated robbery.
(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
"Aiding and abetting" is defined as "[o]ne who assists another in the accomplishment of a common design or purpose." Black's Law Dictionary (6 Ed. 1990) 68. Appellant's trial counsel argued the robbery/murder was committed by the two individuals visible on the videotape, Mr. Leaks and Mr. Holder. During closing argument, appellant's trial counsel argued the actions of the two individuals on the videotape were their own independent acts, and appellant had no involvement in the crimes except for giving the two individuals a ride back to Atlanta. T. at 1214-1215. In March of 1999, appellant lived in Atlanta. T. at 1067-1068. Both Mr. Leaks and Mr. Holder were from the Atlanta area. T. at 964-965. The unrefuted evidence established appellant used a rental car belonging to one Andrea Holder, Mr. Holder's sister, to get to Ohio from Atlanta. T. at 653, 891-892, 908-910, 913-914, 921-922, 928, 1000. Appellant returned the car to Atlanta on March 15, 1999, three days after the robbery/murder. T. at 900. While in Ohio, appellant was in Mansfield and was seen in the company of Mr. Leaks and Mr. Holder. The evening before the robbery/murder, appellant was seen in Satch's Bar with Mr. Leaks and Mr. Holder. T. at 1069-1071. All three individuals stayed at Corey Mack's apartment on the morning of the incident until approximately 4:30 or 4:40 p.m. T. at 1076-1079. Later, all three individuals were seen together at Vinnie's Music. T. at 1155-1157. Appellant was looking for Vincent Barber. T. at 1155. Appellant met with Mr. Barber at the music store around 7:00 or 7:30 p.m. and obtained a firearm that through ballistic comparison was identified as the murder weapon. T. at 857-860, 1110-1112. Appellant claimed he needed the firearm for protection from some men he had previously fought with. T. at 1112. Appellant argues as did his trial counsel that from the above direct evidence, it is too great an inference to conclude he aided and abetted in the robbery/murder. We note "circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." State v. Richey (1992), 64 Ohio St.3d 353,363. Circumstantial evidence is to be given the same weight and deference as direct evidence. State v. Jenks (1991),61 Ohio St.3d 259. We disagree the only logical inference from the direct evidence is that appellant supplied the firearm for the commission of the crimes and provided transportation to Mr. Leaks and Mr. Holder to and from Atlanta. It is not beyond the realm of possibility beyond a reasonable doubt that appellant could have known, planned and participated in the robbery prior to its happening and so aided and abetted Mr. Leaks and Mr. Holder. Mr. Leaks by his own admission did not even know where he was that evening (T. at 949), yet he was on the videotape and fled the scene and disposed of evidence after the fact. T. at 624-626, 716, 1013-1017.
Assignment of Error II is denied.
 III.
Appellant claims he was denied the effective assistance of trial counsel. We disagree. The standard this case must be measured against is set out in State v. Bradley (1989), 42 Ohio St.3d 136,142, certiorari denied 497 U.S. 1011. Appellant must establish two criteria: 1) [C]ounsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition. 2) [P]rejudice arises from counsel's performance.
Appellant must further establish ". . . but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington (1984), 466 U.S. 668,696. Appellant claims his trial counsel was ineffective in not pursuing a Bruton challenge to Mr. Leaks's statement and in not moving for a Crim.R. 29 motion for acquittal. We have addressed these issues in Assignments of Error I and II. We found no Bruton violation nor a lack of sufficient evidence. Appellant also claims his trial counsel failed to object to Detective Parrella's testimony as to what appellant had stated to him in a telephone conversation wherein appellant admitted to being in Mansfield, Ohio with the rental car. T. at 1000. Appellant points out Detective Parrella admitted appellant appeared disoriented during the conversation. T. at 999, 1028; August 2, 1999 T. at 69. Even if this testimony would have been suppressed, there was sufficient evidence in direct testimony to establish that appellant drove to Ohio from Atlanta in the rental car and was with Mr. Leaks and Mr. Holder almost the entire time. T. at 921-922, 928, 968-970, 1073-1075, 1105, 1114, 1156-1158. Therefore, the second prong of Bradley cannot be met. Appellant also claims his trial counsel should have objected to the admissibility of the enhanced video. We note appellant did not contest the fact that Mr. Leaks and Mr. Holder were in the drive thru. We find defense counsel's failure to object to the playing of the videotape was trial strategy. Mr. Holder's fingerprints were found on the cash register key and Mr. Leaks's general description as to clothing was given by witnesses. The defense strategy was not to fight the obvious proven facts but to argue the lack of a nexus between appellant and Mr. Leaks and Mr. Holder during the robbery/murder. This court must accord deference to trial counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987), 32 Ohio St.3d 380, 388. Appellant also claims Captain Phillip Messer's testimony as to the investigatory tip he received (T. at 647) should have been objected to. We find defense counsel did object and challenged Captain Messer's information from the tip as hearsay. T. at 648, 650. The trial court overruled the objection but gave the following cautionary instruction to the jury:
THE COURT: Folks, normally a person is not permitted to say what other people say. Normally the person has to come into the Court and testify himself. In this particular case it's not offered for the truth of the matter, to prove that the persons did actually come from Atlanta or anything else that was said. It's to show why Captain Messer did what he did next. So you should not take what he's saying about what this fellow told him as the truth in trying to prove these people came from Atlanta. You should take it in order for Captain Messer to explain how his investigation went and why he did what he did. Do you understand it's for a limited purpose. That's normally not the way we do things, but there may be things from time to time I have to give you those limited instructions. This is to explain why Captain Messer did what he did, not to prove that what the caller said was true. Proceed.
T. at 651-652. No further testimony was offered on the matter. We agree the testimony about the tip was hearsay and the trial court should have sustained the objection. However, the trial court gave a cautionary instruction to the jury after defense counsel appropriately objected. No assignment of error was raised as to the hearsay and even if it had been raised, the cautionary instruction would have made the error harmless pursuant to Crim.R. 52(A). Upon review, we find no evidence of ineffective assistance of counsel.
Assignment of Error III is denied.
The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.
By FARMER, J.
HOFFMAN, P.J. and READER, V.J. concur.